# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1576

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Erik Zacarias-Cornelio, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

No. 08-1644

_____

Appeals from the United States
District Court for the
District of South Dakota.

| | | |
|---|---|---|
| United States of America, | * | **[UNPUBLISHED]** |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Efrain Cornelio-Gonzalez, also known | * | |
| as Weto, also known as Weto 2, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: May 12, 2009
Filed: October 16, 2009

_____

Before LOKEN, Chief Judge, BYE, Circuit Judge, and MILLER,[*] District Judge.
_____

PER CURIAM.

A jury convicted Efrain Cornelio-Gonzalez and Erik Zacarias-Cornelio of conspiracy to distribute 500 grams or more of a methamphetamine mixture in violation of 21 U.S.C. §§ 841(a)(1) and 846. Based on a prior drug conviction, the district court[1] sentenced Zacarias-Cornelio to the statutory mandatory minimum term, 240 months in prison. See 21 U.S.C. § 841(b)(1)(A)(viii). The court sentenced Cornelio-Gonzalez to 144 months in prison, more than the statutory minimum of 120 months but less than his advisory guidelines sentencing range of 188 to 235 months. Both defendants appeal, arguing there was insufficient evidence to support the guilty verdicts. In addition, Zacarias-Cornelio argues the district court erred in not submitting the issue of his prior drug conviction to the jury. We affirm.

At trial, admitted methamphetamine dealer and user Christina Kline testified that she began purchasing methamphetamine from Cornelio-Gonzalez in August 2005, initially buying one ounce per week, increasing to four to five ounces per day in November. In December, Cornelio-Gonzalez asked Kline to "go through" his nephew, Zacarias-Cornelio. Kline left Sioux Falls after a major customer's arrest in January 2006 but returned in April to buy a "few ounces" from Zacarias-Cornelio. Kline's testimony was supported by testimony of Brian Dupree, her boyfriend, who purchased methamphetamine from Cornelio-Gonzalez when Kline was out of town; Maria Guzman, who saw Kline give money to Cornelio-Gonzalez and saw Cornelio-Gonzalez sell methamphetamine to a man; and Holly Thomas, who transported what

_____

[*]The HONORABLE BRIAN STACY MILLER, United States District Judge for the Eastern District of Arkansas, sitting by designation.

[1]The HONORABLE LAWRENCE L. PIERSOL, United States District Judge for the District of South Dakota.

she believed to be drug money from Kline to Cornelio-Gonzalez. The government also introduced evidence that a warrant search of the residence shared by Cornelio-Gonzalez and Zacarias-Cornelio yielded two small-weight scales, one with a trace of methamphetamine, a bag for a third scale, and a snort tube with a trace amount of methamphetamine. During the search, Zacarias-Cornelio retrieved approximately $1,500 from under a bookshelf in his bedroom.

1. On appeal, Cornelio-Gonzalez concedes the government proved the existence of a conspiracy and his participation, but he argues there was insufficient evidence he conspired to distribute 500 grams or more of methamphetamine. Contrasting the quantity "actually produced at trial" -- 25.5 grams -- with the jury's finding by special interrogatory that the offense involved 8,156 grams of methamphetamine, Cornelio-Gonzalez argues that no reasonable jury could base the vast majority of its drug quantity finding on the uncorroborated testimony of Kline, a cooperating conspirator who was mentally impaired by her prolonged use of methamphetamine.

This drug quantity argument is unpersuasive. The jury's special finding of 8,156 grams was not placed in issue by a challenge to the sufficiency of the evidence. Consistent with the penalty provision in 21 U.S.C. § 841(b)(1)(A)(viii), the indictment charged defendants with conspiring to distribute 500 grams or more of methamphetamine. This was the quantity element of the crime. Thus, we review only whether the evidence was sufficient to support the jury's finding of that quantity. Here, if the jury credited only a fraction of Christina Kline's testimony as to the quantity of methamphetamine she purchased from the defendants, the evidence was sufficient to support a finding of 500 grams or more. Of course, the jury's special finding of 8,156 grams indicates it believed most or all of Kline's testimony as to the amounts of methamphetamine she purchased. Cornelio-Gonzalez argues, as he did at trial, that Kline's testimony was not credible. But as we have repeatedly held, questions of witness credibility are for the jury, not an appellate court. See, e.g., United States v. Vaughn, 410 F.3d 1002, 1004 (8th Cir. 2005) ("[T]he uncorroborated

testimony of an accomplice is sufficient to sustain a conviction if the testimony is not otherwise incredible or unsubstantial on its face.") (quotation omitted), cert. denied, 546 U.S. 1124 (2006). Thus, Cornelio-Gonzalez's conviction must be affirmed.

2. Zacarias-Cornelio argues the government introduced insufficient evidence to support his conviction because there was limited physical evidence linking him to the conspiracy and no reasonable juror could credit the uncorroborated testimony of the government's cooperating witnesses, Christina Kline and her friends. Zacarias-Cornelio acknowledges the many cases upholding convictions on the basis of the testimony of cooperating co-conspirators, such as United States v. Bower, 484 F.3d 1021, 1025-26 (8th Cir. 2007). The evidence in this case is not distinguishable. The testimony of Kline, Dupree, and Kline's major customer established a conspiracy to distribute methamphetamine and Zacarias-Cornelio's willing participation in that conspiracy. In addition, the scales and money uncovered in the warrant search of his residence gave rise to a reasonable inference of participation in a conspiracy to distribute methamphetamine. See United States v. Sanchez-Garcia, 461 F.3d 939, 946 (8th Cir. 2006). Although Zacarias-Cornelio may have joined the conspiracy somewhat later than his uncle, Cornelio-Gonzalez, the evidence was more than sufficient to support a finding that he participated in the distribution of 500 grams or more of methamphetamine.

3. Finally, Zacarias-Cornelio argues that the district court violated his Sixth Amendment right to a jury trial by not submitting the issue of his prior drug conviction to the jury. This argument is foreclosed by prior Eighth Circuit decisions. See United States v. Thomas, 398 F.3d 1058, 1063-64 (8th Cir. 2005).

The judgments of the district court are affirmed.

_____